**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, on behalf of itself and as subrogee/assignee of Josef Matuschka, and JOSEF MATUSCHKA, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Cause No. 18-cv-3080 |
| v. | ) ) | JURY TRIAL DEMANDED |
| PROGRESSIVE DIRECT INSURANCE CO. | ) ) | |
| Defendant. | ) | |

<u>**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**</u>

COME NOW Plaintiffs AMERICAN ALTERNATIVE INSURANCE CORPORATION ("AAIC"), on behalf of itself and as subrogree/assignee of Josef Matuschka, and JOSEF MATUSCHKA ("MATUSCHKA") (collectively, "Plaintiffs"), by and through their attorneys Hinkhouse Williams Walsh LLP, and for their Complaint for Declaratory Judgment and Other Relief against PROGRESSIVE DIRECT INSURANCE COMPANY ("Progressive"), state as follows:

<u>**INTRODUCTION**</u>

1.  This dispute brought by AAIC and Matuschka against Progressive stems from an underlying automobile accident that occurred on March 8, 2014 in the Village of Rosemont whereby Matuschka rear-ended another vehicle causing severe and catastrophic injuries to Diane Edelhauser, the underlying plaintiff.

2.  As a result of the accident, Diane Edelhauser and her husband Ronald Edelhauser filed a personal injury lawsuit in the Circuit Court of Cook County against Matuschka seeking

recovery and compensation for extensive injuries and damages that included a fractured rib, an injured hand, an injured foot, a neck injury, a lower back injury that required a spinal fusion at the L3-L4 segment of her spine, a total right hip replacement, and other injuries. Diane Edelhauser endured multiple surgeries and maintained she was permanently disabled as a result of the accident. Her husband, Ronald Edelhauser, also asserted a loss of consortium claim.

3.    Matuschka was insured by Progressive under a primary automobile liability policy that contained $500,000 in liability limits, and by AAIC under an umbrella policy containing limits of $1,000,000.

4.    Matuschka reported the accident to both Progressive and AAIC, and Progressive accepted the claim and assigned and retained defense counsel to Matuschka without a reservation of rights. At all relevant times, Progressive, through its assigned defense counsel, retained exclusive and complete control of the defense and settlement of the underlying litigation.

5.    From the outset of the litigation, Matuschka's liability for the rear-end accident was never in dispute. Instead, the disputed issue in the case was only whether "some" of Diane Edelhauser's injuries were unrelated to the accident. In other words, the defense strategy employed by Progressive and its assigned counsel was that Matuschka was liable for "some," but possibly not all, of Diane Edelhauser's injuries.

6.    Given the severity of the injuries and the extent of the potential exposure to AAIC and Matuschka, AAIC also retained its own counsel to file an appearance in the litigation to monitor the litigation and the defense being handled by Progressive, and also to protect AAIC's and Matuschka's interests.

7.     Throughout the course of the underlying litigation, numerous depositions were taken, which included the depositions of all Diane Edelhauser's treating physicians and surgeons, as well as her medical expert.  Each of these witnesses further substantiated Diane Edelhauser's claims that all her injuries were caused by, related to, or exacerbated by the auto accident.

8.     Despite multiple opportunities to settle or resolve the litigation before trial within Matuschka's insurance policy limits, Progressive repeatedly and continuously refused to engage in mediation or to meaningfully attempt settlement.

9.     On no fewer than four separate occasions during the course of the underlying litigation, AAIC wrote to Progressive expressing its concern over the handling of the defense of the case and demanded that Progressive participate in settlement or mediation or, at a minimum, tender its policy limits to AAIC so it could take over control of the defense and settlement of the case.

10.     Each and every request made by AAIC was either rejected or completely ignored by Progressive.

11.     Progressive's adjuster also made it clear that Progressive had no incentive to attempt settlement of the case because, if an adverse verdict was rendered at trial, that verdict would be the responsibility of the umbrella carrier.

12.     Knowing that settling the case would require funding its entire $500,000 liability limits, Progressive's adjuster was even brazen enough to acknowledge that Progressive's only chance of paying less than its policy limits on the claim was to gamble on taking the case to trial. Progressive employed this risky strategy at the expense of AAIC's and Matuschka's potential exposure.

13.     Less than one month before trial, the underlying plaintiffs issued a demand to Progressive and AAIC to resolve the case for $825,000. This demand further provided that, if not accepted be the end of the week, it would be forever revoked and the underlying plaintiff would seek $2.5 million at trial. Progressive once again rejected the demand.

14.     AAIC again wrote to Progressive advising its adjuster that Matuschka was demanding that the case be resolved within his available insurance limits and proposed that Progressive tender its policy limits so that AAIC could fund the remainder of the $825,000 settlement. AAIC further advised Progressive that if it refused to tender its policy limits, then AAIC would have no choice but to fund the entire settlement to protect its and Matuschka's exposure and file this action seeking recovery from Progressive.

15.     Progressive rejected AAIC's and Matuschka's demand to resolve the case. One hour before the underlying plaintiffs' settlement demand expired, AAIC agreed to fund and pay the entire $825,000 settlement. This litigation followed.

## THE PARTIES

16.     Plaintiff Josef Matuschka is a citizen of the State of Illinois, and currently resides and maintains his primary residence at 6804 N. Caldwell Ave., Niles, IL 60714.

17.     Plaintiff American Alternative Insurance Corporation is an insurance company organized and existing under the laws of the State of Delaware, with its principal place of business located in Princeton, New Jersey.

18.     Defendant Progressive Direct Insurance Company is an insurance company organized and existing under the laws of the State of Ohio, with its principal place of businesses located in Mayfield Village, Ohio.

4

## JURISDICTION AND VENUE

19.     This Court has jurisdiction pursuant to 28 U.S.C. §1332 because this matter involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§2201 & 2202 in that there exists an actual, justiciable controversy among and between the parties capable of resolution by the Court.

21.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because all or a substantial part of the events giving rise to the relevant claims occurred within the Northern District of Illinois.

## BACKGROUND

### A.     The Edelhauser Litigation

22.     This matter concerns an underlying personal injury lawsuit brought against Matuschka, in connection with injuries sustained by Diane and Ronald Edelhauser on March 8, 2014 when Diane Edelhauser ("Edelhauser") was rear-ended by Matuschka near the intersection of River Road and the I-90 expressway in Rosemont, Illinois ("Accident").

23.     On December 31, 2015, Diane Edelhauser and her husband, Ronald Edelhauser, filed a two-count personal injury complaint against Matuschka in the Circuit Court of Cook County, Illinois, styled *Diane Edelhauser et. al. v. Josef Matuschka*, No. 15 L 013117, Circuit Court of Cook County, Law Division, seeking damages for the injuries Edelhauser allegedly sustained as a result of the Accident, as well as a loss of consortium claim by her husband ("Edelhauser Litigation").

24. As set forth in the Edelhauser Litigation, Edelhauser alleged that the Accident caused her to suffer serious and catastrophic injuries. Edelhauser further claimed her alleged injuries required ongoing treatment and pain management, resulted in a fractured rib, injuries to her neck, injuries to her hand, injuries to her foot, injuries to her lower back necessitating a L3-L4 spinal fusion, and a hip injury resulting in a total right hip replacement. Edelhauser maintained that her injuries were permanent and that she would continue to experience pain for the remainder of her life.

25. Matuschka's liability for the Accident has never been disputed; thus, the Edelhauser Litigation concerned only the nature, extent, and value of the Edelhausers' injuries and damages.

26. The Edelhauser Litigation sought relief in the form of medical expenses, costs of the suit, present and future pain and suffering, and present and future lost wages.

27. In regard to her injuries, Edelhauser produced records totaling just over $392,500 in medical expenses, and claimed she would continue to incur future surgeries and expenses in connection with her injuries. Edelhauser also claimed present and future lost wages in the amount of $279,000, as well as damages in excess of $407,000 for loss of household services. Ronald Edelhauser also asserted a loss of consortium claim. Thus, even without factoring in costs, pain and suffering, or future medical expenses, the Edelhauser Litigation sought damages that exceeded $1 million.

**B.      Insurance Policies at Issue**

28. At the time of the Accident, Matuschka was insured under a primary automobile liability insurance policy No. 901531242 issued by Progressive, effective February 4, 2014 to August 4, 2014, and having limits of $500,000 ("Progressive Primary Policy"). A copy of the

Progressive Primary Policy claims summary and certified copy of the Policy wording is attached hereto, and incorporated herein, as **Exhibit A**.

29.      The Progressive Primary Policy provides in relevant part:

## PART I- LIABILITY TO OTHERS

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I.  If a lawsuit is brought against an **Insured person** seeking both compensatory and punitive or exemplary damages with respect to a claim for acts or alleged acts covered under this Part I, **we** will provide a defense to such lawsuit without liability for any punitive or exemplary damages.

                                    *          *          *

**ADDITIONAL PAYMENTS**

In addition to **our** limit of liability, **we** will pay for an **Insured person**:

1.      all expenses **we** incur in the settlement of any claim or defense of any lawsuit;

                                    *          *          *

30.      At the time of the Accident, Matuschka was also insured under umbrella policy No. U1A2UB1127711-00 issued by AAIC, effective August 4, 2013 to August 4, 2014 ("AAIC Umbrella Policy").  The AAIC Umbrella Policy provided excess coverage with limits of $1 million excess of $500,000 in underlying primary coverage provided by Progressive.  A copy of the AAIC Umbrella Policy is attached hereto, and incorporated herein, as **Exhibit B**.

31.      The AAIC Umbrella Policy provides in relevant part:

## DEFINITIONS

15.      **Primary insurance** means the policies listed in this policy's Umbrella Schedule.

7

16. **Primary Insurer** means any insurer that issues a policy of **primary insurance**.

\* \* \*

## DEFENSE AND SETTLEMENT

**Coverage A- Bodily Injury, Personal Injury, Advertising Injury and Property Damage Liability.**

1. If a claim is made or a **suit** is brought against a **covered person** for damages because of a **loss** to which this insurance applies:

   a. At **our** discretion, **we** may investigate any **loss** and settle any claim or **suit**. **We** have a duty to provide a defense at **our** expense by counsel of **our** choice unless the **loss** is covered by **your primary insurance** or **other insurance.**

   b. **We** have the right but not the duty to join, at **our** expense, with the **covered person** or any **primary insurer** in the investigation, defense, or settlement of any claim or **suit** which we believe may require a payment under this policy. When we have no duty to provide a defense, **we** will not contribute to costs and expenses incurred by the **covered person** or any **primary insurer,** or which any **primary insurer** is obligated to provide.

\* \* \*

## GENERAL CONDITONS

10. Our Right to Recover from Others.

   After **we** have made payment under this policy, **we** have the right to recover the payment from anyone, other than **you,** who may be held responsible for the **loss**. A **covered person** will be required to sign any papers and do whatever else is necessary to transfer this right to **us**. Neither **you** nor anyone else **we** insure in this policy has the right to do anything after a **loss** to prejudice **our** right.

\* \* \*

12. Other Insurance.

   If **other insurance** applies to a **loss** covered by this policy, the insurance under this policy is excess and **we** will not make any payments until such **other insurance** is used up.

8

\*　　　\*　　　\*

## C.　Edelhauser Litigation Defense and Settlement

32.　On April 2, 2015, the Edelhausers' attorney requested formal disclosure from Progressive of the limits of all insurance policies providing coverage to Matuschka. She further advised Progressive that Edelhauser's known medical bills relating to the accident totaled nearly $260,000 at that time, but because she was scheduled to undergo surgery to replace her right hip on May 15, 2015, that amount was expected to increase.

33.　AAIC also received notice of the claim in April of 2015. In a letter to the Edelhausers' counsel dated April 22, 2015, AAIC acknowledged receipt of the claim and disclosed the limits of the AAIC Umbrella Policy.

34.　On December 31, 2015, the Edelhausers filed the Edelhauser Litigation against Matuschka.

35.　On January 4, 2016, counsel for the Edelhausers issued a settlement demand of $1,500,000 to resolve the litigation, which represented Progressive's $500,000 primary policy limits and AAIC's $1,000,000 excess limits.

36.　Progressive neither offered to tender its primary limits in response to the demand, nor did it extend any counteroffer or request to mediate the claim, deeming settlement "premature" at that point, despite the fact that Matuschka's liability was not being contested and the underlying plaintiffs' claimed damages and injuries already totaled over $1 million.

37.　Progressive acknowledged coverage to Matuschka under the Progressive Primary Policy for the Edelhauser Litigation without reserving rights, and retained and assigned Attorney Raymond Fabricius of Fabricius & Lindig to defend the case. Attorney Fabricius filed an appearance in the Edelhauser Litigation on February 11, 2016.

9

38.     As the umbrella carrier directly excess to the Progressive Primary Policy, and in recognition of Matuschka's significant personal assets, AAIC became concerned about Progressive's handling of the Edelhauser Litigation and retained its own counsel to monitor the case and to protect AAIC's and Matuschka's interests.

39.     Accordingly, AAIC's counsel filed an appearance in the Edelhauser Litigation on August 4, 2016.  However, as the primary insurer, Progressive continued to retain exclusive control of the defense and settlement of the Edelhauser Litigation.

40.     In early 2017, counsel for the Edelhausers expressed an interest in mediating or settling the Edelhauser Litigation for an amount at or below the previous demand for $1.5 million, provided the suit could be resolved before the parties incurred extensive time and expense related to the numerous physician, expert and fact witness depositions that would be needed in the case over the next several months.

41.     On January 31, 2017, AAIC wrote to Progressive expressing concern over Progressive's proposed defense strategy of the case, its concern the damages awarded at trial likely would be significant, and a concern that Progressive's refusal to engage in mediation or settlement discussions would ultimately increase the exposure for the claim.  At this time, AAIC requested that Progressive either agree to participate in mediation or tender its primary policy limits to AAIC so that AAIC could take over the defense and settlement of the case.

42.     Progressive responded on February 27, 2017, and advised that despite AAIC's concerns, Progressive continued to view mediation as "premature," and would not consider engaging in settlement discussions until after Edelhauser's treating physicians were deposed.

43.     Because Progressive continued to control the defense of the Edelhauser Litigation and refused to settle or mediate the claim when presented with the opportunity to do so, the parties

were forced to engage in extensive and costly discovery, which ultimately resulted in the defense of the case to become more problematic for Matuschka, just as AAIC predicted. This is because each of Edelhauser's treating physicians verified that all Edelhauser's alleged injuries were the result of, caused by, or exacerbated by the Accident.

44.     At the close of the treating physicians' depositions, the Edelhausers' attorney sent a letter to Progressive, citing deposition testimony elicited from those physicians linking her injuries and damages to the Accident, and demanding that Progressive tender the limits of the Progressive Primary Policy, or in the alternative, agree to participate in a good faith mediation.

45.     Progressive again refused to tender its limits, but agreed to participate in mediation. The parties, including AAIC, agreed to mediate the claims on October 17, 2017 before retired Judge Dennis Burke — just six months prior to the scheduled April 23, 2018 trial date.

46.     Six weeks *after* agreeing to mediate, and after agreeing to use Judge Burke as the mediator, Progressive abruptly advised AAIC and the underlying plaintiffs that it would no longer agree to mediate the case. Both AAIC and the Edelhausers' attorney attempted to contact Progressive's counsel to discuss this matter, but failed to receive any response from Progressive or its counsel for several weeks.

47.     On September 27, 2017, Progressive again agreed to mediate the case, on the condition that the parties utilize a different mediator. The parties then agreed to use retired U.S. District Court Judge Wayne Andersen as the mediator for the mediation, which was scheduled for October 17, 2017.

48.     Approximately *one week* before the October 17, 2017 mediation date with Judge Andersen, Progressive once again unilaterally cancelled the mediation and refused to set a new date or otherwise engage in any further settlement discussions. By this time, both AAIC and

counsel for the Edelhausers had already expended considerable time and expense preparing their mediation submissions.

49.     On November 10, 2017, AAIC again wrote to Progressive advising of its concern of the damage exposure in the case, and its concern that damages likely would exceed Matuschka's total insurance policy limits thereby exposing him to personal liability if the case went to trial. AAIC once again demanded that Progressive either attempt to settle the case in good faith or, alternatively, tender its limits to AAIC so it could take over the defense and settlement of the case.

50.     Progressive entirely ignored AAIC's concerns and never responded to this correspondence.

51.     As the trial date neared, Progressive continued to retain complete and exclusive control of the defense, and retained two expert witnesses on behalf of Matuschka: a neurosurgeon who opined on Edelhauser's back injuries, and an osteopathic surgeon who opined on Edelhauser's hip surgery.  Progressive worked with these experts to draft reports concerning their opinions.

52.     Despite repeated requests by AAIC to participate in the selection and preparation of these experts, Progressive repeatedly refused to cooperate with AAIC and, in fact, refused to even disclose the names of the experts or the content of their reports and findings.  AAIC ultimately learned of the identity of the expert witnesses and the content of their reports when they were first disclosed to counsel for the Edelhausers.

53.     On January 10, 2018, counsel for the Edelhausers contacted Progressive to explore the possibility of mediation or settlement.  At that time, Progressive's adjuster, Greg Niedbalski, advised counsel that Progressive had no incentive to engage in settlement or mediation because if there was an adverse verdict at trial it would ultimately be the responsibility of the umbrella carrier. Mr. Niedbalski also advised counsel that the only way for Progressive to avoid paying its entire

policy limits was, in effect, to take the case to trial with the hope of obtaining a favorable verdict. In other words, Progressive was content to gamble with the limits of the AAIC Umbrella Policy and Matuschka's own personal assets, on the unlikely and off chance it could obtain a favorable verdict at trial and save money.

54.     On January 11, 2018, AAIC sent another letter to Progressive, again expressing concern regarding Progressive's handling of the claim, expressing concern over Progressive's willingness to gamble with AAIC's and Matuschka's exposure, and outlining Progressive's lack of cooperation with AAIC and its refusal to engage in mediation or make any meaningful effort to resolve the claim.  AAIC further advised Progressive that it believed Progressive's conduct was substantially prejudicing AAIC's rights, was in bad faith, exposed Matuschka to potential personal liability, and that AAIC would seek to recover from Progressive in the event of an adverse verdict at trial.

55.     Despite raising these serious issues with Progressive in its January 11, 2018 letter, Progressive once again never responded to AAIC.

56.      On March 28, 2018, the Edelhausers' attorney sent a letter to Progressive and AAIC demanding $825,000 in full and final settlement of the matter, and requested acceptance of the demand on or before 4:00 P.M. on March 30, 2018.  Counsel further advised that should the offer within Matuschka's policy limits not be accepted, the demand would be forever revoked and Edelhauser would seek a verdict in the amount of $2.5 million at trial – an amount well in excess of the combined Progressive Primary Policy and AAIC Umbrella Policy liability limits.

57.     Once again, Progressive never bothered to even advise Matuschka of this settlement demand, the deadline for the demand, or that the possibility existed an adverse verdict at trial could expose him to personal liability.

13

58.     Recognizing that Matuschka faced significant exposure to his personal assets if the matter was not settled prior to trial, AAIC contacted Matuschka and advised him of the settlement demand, and explained the risks of taking the case to trial and the possibility of potential excess exposure.  Matuschka informed AAIC that he wanted the case settled within his available insurance policy limits in order to prevent personal exposure and liability.

59.     Matuschka further advised AAIC that neither Progressive nor its assigned defense counsel, despite having control of his defense and settlement, never previously informed him of the multiple settlement demands already made, or that he could be personally liable for any amounts above the combined limits of the AAIC Umbrella and Progressive Primary Policy limits.

60.     AAIC sent an urgent letter to Progressive on March 29, 2018 in which it advised that the Edelhausers' offer of $825,000 was a fair and reasonable under the circumstances.  Further, AAIC advised Progressive that Matuschka was demanding that the case be settled by his primary and umbrella carriers in advance of trial.  AAIC demanded that Progressive advise of its position on settlement by 2:00 P.M. on March 30, 2018, and that if Progressive remained unwilling to settle the case, AAIC would have no choice but to fund the settlement in its entirety and file this lawsuit against Progressive.

61.     On March 30, 2018, Progressive responded to AAIC's correspondence and declined to tender its policy limits towards a settlement, stating that it continued to believe "a jury will return a verdict for an amount within the $500,000 limits of coverage afforded by Progressive Insurance Company."

62.     In response to Progressive's position, AAIC requested that Progressive provide an assurance to AAIC and Matuschka that if the verdict at trial exceeded Progressive's policy limits,

then Progressive would agree to fund that excess verdict. Progressive immediately rejected this request and continued to remain steadfast in its refusal to meaningfully attempt to resolve the case.

63.     Progressive's unwillingness to meaningfully attempt to resolve the case, its failure to cooperate with AAIC and Matuschka, and its brazen attempt to gamble with AAIC's and Matuschka's liability exposure, left AAIC with no choice but to settle the Edelhauser Litigation and pursue this action.

64.     Accordingly, on March 30, 2018, approximately one hour before the 4 p.m. settlement deadline imposed by the Edelhausers, AAIC contacted the Edelhausers' attorney and agreed to settle the Edelhauser Litigation for $825,000. The settlement agreement was finalized on April 19, 2018, and a dismissal order for the Edelhauser Litigation was filed on April 19, 2018. This lawsuit followed. A copy of the Settlement Agreement and Release is attached hereto, and incorporated herein, as **Exhibit C**.

**COUNT I**
**DECLARATORY JUDGMENT**
**(28 U.S.C. §§2201 & 2202)**
**(Matuschka and AAIC)**

65.     The preceding paragraphs of this Complaint are deemed repeated and re-alleged such that each and every allegation contained in those paragraphs is incorporated by reference for this paragraph of Count I.

66.     An actual controversy exists between Plaintiffs and Progressive with respect to the obligations of Progressive to indemnify Matuschka under the Progressive Primary Policy for the settlement with respect to the Edelhauser Litigation, and is subject to resolution by this Court under 28 U.S.C. §§2201 & 2202.

67.     At or around March 8, 2014, Matuschka promptly reported the accident to his primary automobile insurer, Progressive.

68.     Upon information and belief, Progressive accepted coverage for the Edelhauser claim and Edelhauser Litigation without a reservation of rights to Matuschka.

69.     Pursuant to its obligations under the Progressive Primary Policy, Progressive undertook to defend Matuschka for the Edelhauser Litigation, retained and assigned defense counsel of Progressive's own choosing and, at all relevant times, controlled the defense and settlement of the Edelhauser Litigation through Progressive's assigned counsel.

70.     Pursuant to the terms and conditions of the Progressive Primary Policy, Progressive has an obligation and duty to defend, indemnify and settle "any claim for damages" where a "lawsuit is brought against an Insured person…."

71.     In addition to its limits of liability, the Progressive Primary Policy also includes certain "Additional Payments," which includes "all expenses [Progressive] incurs in the settlement of any claim or defense of any lawsuit…."

72.     Progressive was therefore obligated to provide Matuschka with primary coverage and had the obligation to indemnify Matuschka for the claims in the Edelhauser Litigation.

73.     Under the terms and conditions of the AAIC Umbrella Policy, AAIC's obligation, if any, was to provide excess coverage to Matuschka for the claims in the Edelhauser Litigation over any applicable underlying insurance, which includes the Progressive Primary Policy as identified on AAIC's Umbrella Schedule.

74.     The AAIC Umbrella Policy does not provide a defense obligation for a covered loss where that "loss is covered by [Matuschka's] primary insurance or other insurance."

75.     However, the terms and conditions of the AAIC Umbrella Policy further provide that AAIC has the "right but not the duty" to join in the "investigation, defense or settlement of any claim suit which we believe may require a payment under this policy.  When we have no duty

to provide a defense, we will not contribute to the costs and expenses incurred by the covered person or any primary, or which any primary insurer is obligated to provided."

76.     The term "Primary Insurer" is defined in the AAIC Umbrella Policy as any insurer that issues a policy of primary insurance," which includes Progressive as set forth in the AAIC Umbrella Schedule.

77.     Progressive, as the primary insurer, therefore had the primary obligation to defend and indemnify Matuschka for the Edelhauser Litigation before AAIC's defense or indemnification obligation, if any, was triggered.

78.     Progressive also had a primary obligation to undertake and participate in mediation and/or settlement of the claims asserted in the Edelhauser Litigation or, at a minimum, fund and contribute to some or all the settlement of the Edelhauser Litigation.

WHEREFORE, Plaintiffs request that this Court enter an Order granting the following relief:

i)      A Declaration and Order finding that the Progressive Primary Policy was triggered and Progressive had the duty to defend Matuschka for the claims asserted in the Edelhauser Litigation;

ii)     A Declaration and Order finding that the Progressive Primary Policy was triggered and Progressive had a duty to indemnify Matuschka for the claims asserted in the Edelhauser Litigation;

iii)    A Declaration and Order finding that Progressive is required to contribute, fund and/or pay some or all the settlement for the claims asserted in the Edelhauser Litigation;

iv)     A Declaration and Order finding that the Progressive Primary Policy provided primary coverage to Matuschka and therefore Progressive had the primary obligation to indemnify and settle the claims asserted against Matuschka in the Edelhauser Litigation;

v)      A Declaration and Order finding that the AAIC Umbrella Policy provided excess coverage to Matuschka for claims asserted in the Edelhauser Litigation above the Progressive Primary Policy;

vi)     A Declaration and Order awarding Plaintiffs their costs, fees, and interest as this Court deems appropriate; and

vii)    Any other relief this Court deems just and appropriate.

## COUNT II
## BREACH OF CONTRACT AS TO PROGRESSIVE'S DUTY TO INDEMNIFY
### (Matuschka and/or AAIC as assignee/subrogee)

79.     The preceding paragraphs of this Complaint are deemed repeated and re-alleged such that each and every allegation contained in those paragraphs is incorporated by reference for this paragraph of Count II.

80.     Matuschka paid substantial premiums and provided due consideration to Progressive when he purchased the Progressive Primary Policy.

81.     At all relevant times, Matuschka satisfied his obligations and complied with the terms, conditions, and requirements of the Progressive Primary Policy.

82.     At all relevant times, Matuschka sought insurance coverage from Progressive and tendered to Progressive the claims relating to the Edelhauser Litigation.

83.     Progressive accepted coverage for the claims and lawsuit relating to the Edelhauser Litigation and did so without asserting a reservation of rights.

84.     At all relevant times, Progressive, together with its assigned defense counsel, maintained and had exclusive control over the defense and settlement of the Edelhauser Litigation.

85.     Progressive therefore had an obligation and/or duty, both at common law and pursuant to the terms of the Progressive Primary Policy, to protect the interests of Matuschka with respect to the Edelhauser Litigation.

86.     In the course of its defense of Matuschka in the Edelhauser Litigation, Progressive received at least two settlement demands, both of which far exceeded the policy limits of the Progressive Primary Policy.

87.     Despite receiving multiple demands from counsel for the underlying plaintiffs to settle the Edelhauser Litigation, Progressive and/or its assigned defense counsel never informed Matuschka of these demands or the opportunity to settle the case.

88.     Throughout the course of the Edelhauser Litigation, Progressive and its assigned defense counsel also never informed Matuschka of the potential implication of his umbrella policy, or that the possibility existed that Matuschka himself could face uninsured exposure if a verdict was rendered at trial in excess of his insurance limits.

89.     On at least two occasions, Progressive initially agreed to participate in a mediation and, only after a mediator was agreed to and retained by the parties, it abruptly and inexplicably refused to participate in mediation.

90.     Despite specific and direct knowledge that the injury claims asserted in the Edelhauser Litigation were catastrophic and serious, and despite direct and specific knowledge that Matuschka's liability for the accident was not being disputed and Matuschka faced significant uninsured exposure, Progressive still steadfastly and repeatedly refused to meaningfully respond to the underlying plaintiffs' settlement demands, refused to meaningfully attempt to resolve case, and refused to indemnify Matuschka for the final agreed settlement.

91.     Notwithstanding multiple requests by AAIC, Progressive also repeatedly and steadfastly refused to either tender its limits to AAIC or allow AAIC to take over the defense and settlement of the case.

92.     Progressive's conduct and actions of failing or refusing to honor its obligations to defend and settle the Edelhauser Litigation and/or cooperate with and/or protect the interests of Matuschka, constitutes one or more material breaches of the terms and conditions of the Progressive Primary Policy.

93.     As a consequence of Progressive's material breach or breaches of its obligations, Progressive is also estopped from challenging Matuschka's or AAIC's decision to engage in the settlement of the Edelhauser Litigation.

94.     As a proximate result of Progressive's material breach or breaches, Matuschka has suffered considerable damages insofar as he was left without the benefit of the insurance provided by Progressive that he paid considerable premiums for, and also that he had to rely on his umbrella insurer to step up, fund the settlement, and protect his interests.

WHEREFORE, Plaintiffs request that this Court enter an Order granting the following relief:

i)      An Order declaring that Progressive is estopped from challenging Matuschka's and AAIC's decision to resolve the case;

ii)     An Order awarding Plaintiffs compensatory and consequential damages for Progressive's material breach of its obligation under the Progressive Primary Policy to indemnify Matuschka for the claims asserted in the Edelhauser Litigation;

iii)    An Order awarding fees, costs, and interest as this Court deems appropriate; and

iv)     Any other relief this Court deems just and appropriate.

## COUNT III
## PROGRESSIVE'S VEXATIOUS AND UNREASONABLE CONDUCT
## (215 ILCS 5/155)
## (Matuschka and/or AAIC as assignee/subrogee)

95.     The preceding paragraphs of this Complaint are deemed repeated and re-alleged such that each and every allegation contained in those paragraphs is incorporated by reference for this paragraph of Count III.

96.     On January 4, 2016, the underlying plaintiff issued a demand letter addressed to Progressive and AAIC seeking to resolve the Edelhauser Litigation for $1,500,000, which constituted the combined policy limits available to Matuschka under the Progressive Primary Policy ($500,000) and the AAIC Umbrella Policy ($1 million).

97.     The January 4, 2016 letter also set forth that the underlying plaintiff had the following compensable claims: (1) more than $392,000 of current and known medical expenses or "medical specials" related to the accident; (2) in excess of $270,000 in lost wages due to her permanent disability; (3) approximately $407,000 in loss of household services; and (4) damages related to the loss of consortium claim being made by the underlying plaintiff's husband.

98.     Upon information and belief, Progressive never informed Matuschka of this demand.

99.     In response to underlying plaintiff's January 4, 2016 demand, Progressive neither offered to tender its primary limits in response to the demand, nor did it extend a counteroffer or request to mediate the claim at that time.

100.    One year later, on January 31, 2017, AAIC wrote to Progressive's adjuster, Kirk Hildebrandt, addressing Progressive's continued refusal and unwillingness to settle or consider mediating the case despite the underlying plaintiff's claimed injuries being substantiated through her medical records.  AAIC also demanded that Progressive tender its remaining policy limits to AAIC so that AAIC could take over the defense and settlement of the claim.

101.     On February 27, 2017, Progressive responded to AAIC's letter by advising that it was still investigating the claim and that it believed mediation or settlement was premature.

102.     On November 11, 2017, AAIC once again wrote to Progressive's adjuster expressing concern over Progressive's outright refusal to mediate or settle the claim and specifically noted that the recent depositions of the underlying plaintiff's treating physicians had further substantiated her claims, increasing the potential exposure to both AAIC and Matuschka.

103.     AAIC also noted in its November 11, 2017 letter that on two occasions Progressive agreed to mediate the case, but then abruptly cancelled both mediations.  AAIC once again demanded that Progressive tender its limits to AAIC so that AAIC could take over the defense and settlement of the claim.

104.     Progressive never responded to AAIC's November 11, 2017 letter.

105.     On January 10, 2018, Mr. Niebalski stated to counsel for the Edelhausers that Progressive had no interest or incentive to settle the case because an adverse verdict would be the responsibility of the umbrella carrier.  Mr. Niedbalski also made further admissions to counsel that clearly demonstrates Progressive's true motivation was to attempt to avoid paying its entire policy limits by, in effect, gambling with AAIC's and Matuschka's exposure by taking a chance at trial.

106.     On January 11, 2018, counsel for AAIC again wrote to Progressive addressing Progressive's lack of cooperation with AAIC, its refusal to engage in meaningful settlement discussions, and Progressive's disregard for the potential exposure to Matuschka in the event of an excess verdict at trial.

107.     Progressive once again never responded to this January 11, 2018 correspondence from AAIC.

108.     On March 28, 2018, less than one month before the scheduled trial in the Edelhauser Litigation, counsel for the underlying plaintiffs issued a demand to Progressive and AAIC to settle and release all claims against Matuschka for $825,000.  Counsel for the plaintiff also advised that if the settlement demand was not accepted by the end of the week, then it would be forever revoked and Edelhauser would seek $2.5 million in damages at trial.

109.     Despite being in complete control of the defense and settlement of the case, neither Progressive nor its assigned counsel advised or even attempted to advise Matuschka of the underlying plaintiffs' demand, the deadline for the demand, or the potential excess exposure to Matuschka if there was an adverse verdict.

110.     On March 29, 2018, AAIC wrote to Progressive to advise that Matuschka was demanding that both Progressive and AAIC settle the case within his available insurance coverage. AAIC indicated that if Progressive continued its refusal to settle or contribute to a settlement, AAIC would have no choice but to fund the entire settlement itself and pursue legal recovery from Progressive in order to protect Matuschka's personal assets.

111.     On March 30, 2018, Progressive's counsel wrote to AAIC advising that it was declining Matuschka's and AAIC's demand to settle the case and that it "believed" a jury verdict would be rendered at trial for less than Progressive's $500,000 limits.

112.     AAIC responded to Progressive by requesting that Progressive provide an assurance to AAIC and Matuschka that if a verdict exceeded Progressive's primary limits, then Progressive would agree to fund the excess verdict.

113.     Progressive advised AAIC that it would provide no such assurance against an excess verdict and would not agree to fund a verdict in excess of its limits.

114.    Progressive thereafter failed to take any further action to resolve or attempt to resolve the case, or to protect the interests of its insured, Matuschka.

115.    On March 30, 2018, within an hour of the settlement deadline imposed by the underlying plaintiffs' demand, AAIC agreed resolve the Edelhauser Litigation and fund the entire $825,000 settlement amount in accordance with Matuschka's request and to protect his interests.

116.    Illinois Statute 215 ILCS 5/155 ("Section 155") provides in relevant part as follows:

    155. Attorneys fees.

    (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

        (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

        (b) $60,000;

        (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

117.    Progressive's conduct is in violation of Section 155 in that it vexatiously and unreasonably:

        (a)    refused to resolve or delayed settling the claim and Edelhauser Litigation;

        (b)    failed to protect Matuschka's interests in breach of its duties and obligations under the Progressive Primary Policy;

        (c)    breached its duty of good faith and fair dealing by way of its conduct, statements and actions that were clearly motivated by Progressive's self-interest to save its policy limits at the expense of AAIC's and Matuschka's exposure;

        (d)    failed to protect Matuschka from a potential excess verdict;

24

(e) failed to protect Matuschka's rights under the AAIC Umbrella Policy;

(f) failed to cooperate with AAIC to the mutual benefit of Progressive's and AAIC's insured, Matuschka;

(g) exposed not only Progressive to a bad faith claim in the event of an excess verdict at trial, but also Progressive's conduct forced AAIC into an untenable position insofar as it would have exposed AAIC to a potential bad faith claim in the event AAIC had not taken the extraordinary step to fund the entire claim and settlement on behalf of Matuschka; and

(h) failed to preserve Matuschka's available policy limits under the AAIC Umbrella Policy.

WHEREFORE, Plaintiffs request that this Court enter an Order granting the following relief:

i) An Order finding that Progressive's conduct, actions, statements and/or material breaches of its policy obligations were vexatious and unreasonable in violation of Section 155;

ii) An Order finding that Plaintiffs are entitled to their attorneys' fees, costs and interest, as well as an amount not to exceed $60,000 in accordance with Section 155; and

iii) Any other relief this Court deems just and appropriate.

## COUNT IV
## CONTRACTUAL SUBROGATION
### (AAIC as subrogee)

118. The preceding paragraphs of this Complaint are deemed repeated and re-alleged such that each and every allegation contained in those paragraphs is incorporated by reference for this paragraph of Count IV.

119. Pursuant to the terms of the Progressive Primary Policy, Progressive owed a duty to defend and indemnify Matuschka with regard to the Edelhauser Litigation.

120. Progressive refused and/or failed to honor its duties to settle and indemnify Matuschka with regard to the claims in the Edelhauser Litigation.

121. As a result of Progressive's failure to honor its duties and obligations under the Progressive Primary Policy, AAIC was forced to resolve the Edelhauser Litigation and fund the entire settlement that was owed, and which should have been funded, in whole or in part, by Progressive.

122. As Matuschka's primary insurer, Progressive was primarily liable to Matuschka for the claims asserted in the Edelhauser Litigation.

123. As Matuschka's umbrella insurer, AAIC was secondarily liable to Matuschka for the claims asserted in the Edelhauser Litigation.

124. As a result of the settlement agreement and release that was funded and executed in the Edelhauser Litigation, all liability against Matuschka has been discharged and released.

125. The settlement agreement and release also operated to discharge AAIC's and Progressive's liability to Matuschka for the claims asserted in the Edelhauser Litigation.

126. The AAIC Umbrella Policy contains an "Our Right to Recover from Others" provision that gives AAIC a contractual right of subrogation to recover all or part of any payment made under the AAIC Umbrella Policy that should have been made by another party.

127. AAIC has paid and funded the entire $825,000 settlement on behalf of Matuschka for the claims and losses relating to the Edelhauser Litigation, and Matuschka has agreed to subrogate, transfer and/or assign his rights to AAIC.

128. In addition to the $825,000 settlement, AAIC also incurred additional expenses, costs and fees related to resolving and settling the Edelhauser Litigation, as well as fees and costs to bring this action.

129.     As a result of AAIC's payments made on behalf of Matuschka to resolve the Edelhauser Litigation, AAIC has a contractual right of subrogation to recover all or some of these payments from Progressive.

WHEREFORE, Plaintiff AAIC, as subrogee, requests that this Court enter an Order granting the following relief:

i)      An Order awarding AAIC recovery for payments it made to resolve the Edelhauser Litigation on behalf of Matuschka that should have been owed or funded under the Progressive Primary Policy;

ii)     An Order awarding AAIC its costs, fees, and interest; and

iii)    Any other relief this Court deems just and appropriate.

**COUNT V**
**EQUITABLE SUBROGATION**
**(AAIC as subrogee – pleaded in the alternative)**

130.     The preceding paragraphs of this Complaint are deemed repeated and re-alleged such that each and every allegation contained in those paragraphs is incorporated by reference for this paragraph of Count V.

131.     Pleading solely in the alternative to Count IV, AAIC is entitled to equitable subrogation from Progressive under applicable Illinois law.

132.     Pursuant to the terms of the Progressive Primary Policy, Progressive owed a duty to defend and indemnify Matuschka with regard to the Edelhauser Litigation.

133.     Progressive refused and/or failed to honor its duties to settle and indemnify Matuschka with regard to claims in the Edelhauser Litigation.

134.     As a result of Progressive's failure to honor its duties and obligations under the Progressive Primary Policy, AAIC was forced to resolve the Edelhauser Litigation and fund the

entire settlement that was owed, which should have been funded, in whole or in part, by Progressive.

135. As Matuschka's primary insurer, Progressive was primarily liable to Matuschka for the claims asserted in the Edelhauser Litigation.

136. As Matuschka's umbrella insurer, AAIC was secondarily liable to Matuschka for the claims asserted in the Edelhauser Litigation.

137. As a result of the settlement agreement and release executed in the Edelhauser Litigation, all liability against Matuschka has been discharged and released.

138. The settlement agreement and release also operated to discharge AAIC's and Progressive's liability to Matuschka for the claims asserted in the Edelhauser Litigation.

139. AAIC has paid and funded the entire $825,000 settlement on behalf of Matuschka for the claims and losses relating to the Edelhauser Litigation.

140. In addition to the $825,000 settlement, AAIC also incurred additional expenses, costs and fees related to resolving and settling the Edelhauser Litigation, as well as fees and costs associated with bringing this action.

141. As a result of AAIC's payments made on behalf of Matuschka to resolve the Edelhauser Litigation, AAIC has an equitable right of subrogation to recover all or some of these payments from Progressive.

WHEREFORE, Plaintiff AAIC, as subrogee, requests, in the alternative to Count IV, that this Court enter an Order granting the following relief:

i) An Order awarding AAIC recovery for payments it made to resolve the Edelhauser Litigation on behalf of Matuschka that should have been owed or funded under the Progressive Primary Policy;

ii) An Order awarding AAIC its costs, fees, and interest; and

iii)    Any other relief this Court deems just and appropriate.

## COUNT VI
## UNJUST ENRICHMENT
## (AAIC)

142.    The preceding paragraphs of this Complaint are deemed repeated and re-alleged such that each and every allegation contained in those paragraphs is incorporated by reference for this paragraph of Count VI.

143.    Progressive owed a duty to defend and indemnify Matuschka under the Progressive Primary Policy with respect to claims in the Edelhauser Litigation.

144.    Progressive wrongfully refused to honor its indemnity obligation to Matuschka, and refused to fund or contribute any payments towards the settlement, with respect to the Edelhauser Litigation.

145.    As a result, AAIC incurred and funded additional defense and indemnity payments for the settlement of the Edelhauser Litigation that should have been satisfied or borne by Progressive.

146.    Progressive therefore unjustly benefited and was enriched by its own breach and failure to honor its obligation to Matuschka under the Progressive Primary Policy at AAIC's expense and to AAIC's detriment.

147.    It would therefore be unjust to allow Progressive to retain the benefit of payments made by AAIC that were the result of Progressive's own breach and failure to honor its obligations under the Progressive Primary Policy to Matuschka.

148.    Accordingly, Progressive has unjustly retained certain benefits related to the settlement of the Edelhauser Litigation that was funded by AAIC, and Progressive's retention of those benefits violates fundamental principles of justice, equity and good conscience.

29

WHEREFORE, Plaintiff AAIC requests that this Court enter an Order granting the following relief:

i) An Order awarding AAIC restitution and recovery for the settlement payment it funded and paid on behalf of Matuschka for which Progressive was legally obligated to fund and pay under the Progressive Primary Policy relating to claims in the Edelhauser Litigation;

ii) An Order awarding AAIC restitution and recovery for any additional payments AAIC made on behalf of Matuschka relating to the Edelhauser Litigation for which this Court determines should have been rightfully paid by Progressive;

iii) An Order awarding costs, fees and interest as this Court deems appropriate; and

iv) Any other relief this Court deems just and appropriate.

## COUNT VII
## PROGRESSIVE'S BREACH OF DUTY OF GOOD FAITH
### (AAIC itself and/or as assignee/subrogee of Matuschka)

149. The preceding paragraphs of this Complaint are deemed repeated and re-alleged such that each and every allegation contained in those paragraphs is incorporated by reference for this paragraph of Count VII.

150. At all relevant times, Progressive, as Matuschka's primary insurer, had exclusive control over the defense and settlement of the Edelhauser Litigation.

151. Progressive therefore knew, or should have known, that because the case involved a rear-end accident, the liability of Matuschka would not be contested at trial, and that the sole issue for trial was the extent of the underlying plaintiffs' injuries.

152. In the course of the Edelhauser Litigation, the underlying plaintiff submitted nearly $400,000 in uncontested medical bills, or "medical specials," that she maintained were incurred for her injuries and were related to the accident with Matuschka.

153. Progressive also knew, or should have known, that the underlying plaintiffs' treating physicians each testified under oath at their depositions that the underlying plaintiff's

extensive injuries were related to, caused by, or exacerbated by the accident, and also that the underlying plaintiff was likely to need additional future surgeries including another costly future hip replacement.

154.　Progressive therefore knew, or should have known, that a reasonable probability existed that the jury verdict against Matuschka was likely, if not nearly certain, to exceed Progressive's $500,000 primary limits.

155.　At all relevant times, AAIC, Matuschka's umbrella insurer, monitored the defense of the Edelhauser Litigation, and retained and assigned its own counsel to file an appearance in the Edelhauser Litigation to monitor and protect AAIC's and Matuschka's interests.

156.　Counsel for AAIC reviewed all discovery exchanged and attended all depositions during the course of the Edelhauser Litigation.

157.　Despite knowing that AAIC's counsel had an appearance on file in the case and was closely monitoring the Edelhauser Litigation, and despite knowing it had an obligation to protect Matuschka from an excess verdict, Progressive and/or its assigned defense counsel:

    (a)　continually and repeatedly refused to cooperate with AAIC's counsel by withholding or refusing to provide information pertinent to the case and defense of Matuschka, including, but not limited to, failing or refusing to provide AAIC copies of expert reports, analysis and other information that were prepared on behalf of Matuschka and necessary for the assessment and evaluation of the case and settlement;

    (b)　continually and repeatedly refused to engage in any meaningful settlement negotiations with the underlying plaintiffs;

    (c)　failed to take advantage of reasonable settlement opportunities presented during the Edelhauser Litigation;

    (d)　failed to report to or advise Matuschka of any of the settlement opportunities during the Edelhauser Litigation;

    (e)　agreed on two occasions to mediate the case and, only after the mediators were agreed to and retained by the parties, abruptly cancelled those mediations, which

required AAIC to incur unnecessary expenses and costs associated with the preparation for those mediations;

(f)    continually and repeatedly failed to respond to AAIC's demands to Progressive to engage in settlement, tender its limits, and/or allow AAIC to take over the defense of the Edelhauser Litigation;

(g)    refused to provide either AAIC or the underlying plaintiffs' counsel with a copy of the Progressive Primary Policy, and then only agreed to do so a month before trial after the underlying plaintiff's counsel filed an emergency motion to compel against Progressive;

(h)    made statements to underlying plaintiffs' counsel and/or others indicating that Progressive had no incentive to settle the case because if there was an adverse jury verdict, the umbrella carrier will be primarily liable for the verdict;

(i)    unreasonably and vexatiously exposed AAIC to a potential bad faith claim because, had AAIC not stepped in to resolve the claim, and had an excess verdict was rendered against Matuschka, then AAIC too would have been exposed to bad faith liability; and

(i)    made statements to underlying plaintiffs' counsel and/or others suggesting that, in effect, Progressive's self-interested motivation for refusing to settle or mediate was to save money, and to avoid having to pay its entire policy limits at the expense of AAIC's and Matuschka's potential exposure.

158.    Progressive owed a duty to AAIC and to Matuschka to act reasonably and in good faith in settling or attempting to settle the Edelhauser Litigation.

159.    Progressive breached its duty and obligations to AAIC and Matuschka by failing to contribute any of its primary policy limits to the settlement of the Edelhauser Litigation.

160.    Progressive also breached its duty and obligations to AAIC and Matuschka by failing to preserve and/or protect the available limits of the AAIC Umbrella Policy.

161.    Progressive's conduct, actions and/or statements also constitutes a breach of Progressive's duty of good faith and fair dealing to both AAIC and Matuschka.

162.    As a proximate result of Progressive's negligent, reckless, willful and/or bad faith conduct, actions or statements, AAIC was required to fund the entire $825,000 settlement of the

Edelhauser Litigation, which has also resulted in Matuschka losing certain benefits due to the impairment of the AAIC Umbrella Policy.

WHEREFORE, Plaintiff AAIC requests that this Court enter an Order granting the following relief:

i)        An Order declaring that Progressive breached its duties owed to AAIC;

ii)       An Order declaring that Progressive breached its duties owed to Matuschka;

iii)     An Order awarding compensatory and/or consequential damages;

iv)     An Order awarding punitive or exemplary damages;

v)       An Order awarding costs, fees and interest as this Court deems appropriate; and

vi)     Any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Dated: April 30, 2018

Respectfully submitted,

HINKHOUSE WILLIAMS WALSH, LLP

By:    /s/ David M. Dolendi       

*One of the Attorneys for Plaintiffs*
*AMERICAN ALTERNATIVE*
*INSURANCE CORPORATION and*
*JOSEF MATUSCHKA*

David M. Dolendi, ARDC # 6277384
Sarah L. Zinsmeister, ARDC # 6307398
HINKHOUSE WILLIAMS WALSH, LLP
180 North Stetson, Suite 3400
Chicago, Illinois 60601
Phone: 312.784.5400
Facsimile: 312.784.5499
ddolendi@hww-law.com
szinsmeister@hww-law.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that I served the forgoing instrument upon the following by First Class mail, postage prepaid, at 180 N. Stetson Avenue, Chicago, Illinois before 5:00 p.m. on this 30th day of April 2018:

Progressive Direct Insurance Company
6300 Wilson Mills Rd
Mayfield Village, OH 44143


/s/_____David M. Dolendi_____


David M. Dolendi, ARDC # 6277384
HINKHOUSE WILLIAMS WALSH, LLP
180 North Stetson, Suite 3400
Chicago, Illinois 60601
Phone: 312.784.5448
Facsimile: 312.784.5484
ddolendi@hww-law.com

34